(967 P.2d 1091)
No. 78,338

In the Matter of the Estate of ROGER DEAN HARRISON, Deceased.

Opinion filed November 25, 1998.

*John G. Atherton*, of Atherton & Atherton, of Emporia, for appellants Scott R. Harrison and Kristi M. Harrison.

*Rodney H. Symmonds*, of Symmonds & Symmonds, of Emporia, for appellee Cathryn Harrison.

Before ELLIOTT, P.J., PIERRON and ROYSE, JJ.

ELLIOTT, J.: This appeal involves a dispute between Scott R. and Kristi M. Harrison (appellants and adult children of the deceased, Roger Dean Harrison) and Cathryn Harrison, their stepmother and administratrix of Roger's estate. Scott and Kristi appeal the trial court's summary judgment in Cathryn's favor and from the order of final settlement of the estate. Appellants raise several issues, including that Cathryn's acts as administratrix and a settlement agreement between Cathryn and Roger's mother were void; and that Cathryn inappropriately used estate funds to repay a loan from Roger's 401(k) plan in order to increase her personal benefit as the legal beneficiary of the 401(k) plan.

We affirm.

The facts underlying this appeal are somewhat involved. Roger, who had been preceded in death by his father, Jack, died intestate, survived by his mother, Freda; his wife, Cathryn; and his children from a prior marriage, Scott and Kristi. While alive, Roger conveyed two 5-acre pieces of land to himself and his parents as joint tenants. He also designated his parents as beneficiaries of his 401(k) plan with Wolf Creek Nuclear Operating Corporation (Wolf Creek).

After marrying Cathryn, Roger failed to notify Wolf Creek of the marriage, and Roger did not have Cathryn's consent to the designation of his parents as beneficiaries of his 401(k) plan. Also

without Cathryn's consent, Roger borrowed $23,000 from the trustee of the 401(k) plan to purchase 80 acres of land. Roger granted the trustee a security interest in the 401(k) plan and agreed the trustee could withhold any money owed to him, his beneficiaries, or his estate to repay any balance due on the note. The 80 acres were conveyed to Roger and his parents as joint tenants.

After Roger's death, a magistrate judge appointed Cathryn administratrix and issued letters of administration under the Kansas Simplified Estates Act (K.S.A. 59-3201 *et seq.*), requiring Cathryn to file an oath, but not requiring her to post any bond; none of the parties waived the bond requirement.

Cathryn filed an inventory and valuation of Roger's property, reciting there was $49,000 in probate assets—primarily the 401(k) savings plan. The inventory also listed $260,000 in nonprobate assets, mainly a life insurance policy naming Roger's mother as beneficiary. The inventory indicated there was not any real property in the estate but there was some land owned in joint tenancy by Roger and Freda with an estimated value of some $72,000.

Wolf Creek notified the parties that the assets of the 401(k) plan should be distributed to Cathryn under federal law, and no one contested that decision; the 401(k) monies were never deposited into the estate.

At some point, the magistrate judge approved a partial distribution to Scott and Kristi. Later, Cathryn and Freda entered into a settlement agreement regarding the 90 acres of land held in joint tenancy by Roger and Freda. Under the agreement, Cathryn would receive $19,250 from the sale of the real property, and Freda would disclaim any interest in the personalty in Roger and Cathryn's house. The settlement was approved by the magistrate judge.

The magistrate judge granted Cathryn her statutory allowance as a widow under K.S.A. 59-403, awarded her various personalty and a cash allowance, and approved Cathryn's request to auction some of Roger's personal property to pay various debts.

Cathryn then used some $19,000 of estate assets to pay the balance of Roger's loan from the 401(k) plan, and paid herself a $10,000 partial distribution from the estate.

Eventually, Cathryn filed a petition for final settlement of the estate under the Simplified Estates Act and Scott and Kristi filed written defenses.

At Scott and Kristi's request, the matter was transferred to a district judge. Both sides filed for summary judgment, and the trial court conducted hearings on the motions. In granting Cathryn's motion for summary judgment, the trial court

— ruled the acts of the administratrix were not void because the court had cloaked her with apparent authority by issuing letters of administration;

— emphasized that no one had challenged the majority of Cathryn's acts, but rather had ratified her actions;

— found there was no justiciable issue regarding the settlement agreement because the property and its sales proceeds were not part of the estate;

— ruled the repayment of Roger's outstanding loan balance from estate assets was in the best interests of the estate;

— and granted Cathryn's petition for final settlement of the estate.

At the outset, it is questionable whether a motion for summary judgment is appropriate in a probate proceeding since the probate code does not provide for the filing of one. See K.S.A. 59-2201 *et seq.* Our Supreme Court has rejected an assertion that all probate matters are governed by the rules of civil procedure. *In re Estate of Suesz*, 228 Kan. 275, 276, 613 P.2d 947 (1980).

K.S.A. 1997 Supp. 59-2212 provides that all trials and hearings in probate matters shall be by the court unless otherwise provided. Further, K.S.A. 1997 Supp. 59-2213 merely prevents a probate court from entering a judgment without proof. Since neither party in the present case contested the statements of fact presented in the summary judgment motions, it appears there were no genuine issues of material fact to resolve. And neither party contests the trial court's finding the case was ripe for summary adjudication.

As a result, the issue on appeal is whether the trial court entered judgment for the proper party as a matter of law.

Scott and Kristi contend the trial court erred in finding Wolf Creek was not obligated to file a claim in Roger's estate and that repayment of the loan balance to the 401(k) plan with estate assets was in the estate's best interest. Scott and Kristi claim Wolf Creek was a general creditor and should have filed a claim against the estate before Cathryn used estate assets to repay the loan balance.

Under K.S.A. 59-1303, a secured creditor of the decedent either may file a demand against the estate and have the demand allowed in full so long as the security is surrendered or, if the security is exhausted, make a claim for any remaining balance on the debt. See *In re estate of Dahn*, 204 Kan. 535, 540, 464 P.2d 238 (1970). K.S.A. 59-1303 is limited to security interests in property that is part of the decedent's estate. *Farmers State Bank of Ingalls v. Friesen*, 15 Kan. App. 2d 132, 135, 803 P.2d 1049 (1990), *rev. denied* 248 Kan. 995 (1991).

It is uncontroverted that Wolf Creek's trustee obtained a security interest in Roger's 401(k) plan in exchange for the loan; the trustee did not have a lien on any other property of Roger's. Thus, to resolve this issue, we must decide whether the proceeds from Roger's 401(k) plan are part of Roger's estate.

The parties do not dispute that federal law controls the distribution of Roger's retirement plan and that Cathryn was entitled to proceeds from the plan. The plan provides it is subject to the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* (1994). Section 1144(a) of ERISA provides that federal law supersedes state laws which "relate to" an ERISA plan. Since the designation of beneficiaries "relate to" the 401(k) plan, federal law controls. See *McMillan v. Parrott*, 913 F.2d 310, 311 (6th Cir. 1990).

The Retirement Equity Act of 1984, 26 U.S.C. § 401 *et seq.*, amended various provisions of ERISA and the Internal Revenue Code. See 29 U.S.C. § 1055 *et seq.* (1994); 26 U.S.C. §§ 401, 417 (1994). Applicable provisions provide that the surviving spouse of a participant in a qualified plan receives the plan benefits following the death of the participant *unless* the spouse consents in writing to waive the benefits. See 26 U.S.C. § 401(a)(11); 29 U.S.C. § 1055.

Roger's 401(k) plan is consistent with the requirements imposed by ERISA. The plan provides that if a deceased married member designated a beneficiary other than "his spouse, such designation shall not be valid unless the spouse consented in writing." The plan further provides that if it is determined by Wolf Creek that a member's beneficiary designation is invalid for any reason, the death benefits shall be paid to the member's surviving spouse.

Following his marriage, Roger did not obtain Cathryn's consent to the designation of his parents as beneficiaries. Under the clear language of the plan and of applicable federal law, only Cathryn was entitled to the plan benefits. See *Moore v. Philip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993); *Hurwitz v. Sher*, 982 F.2d 778, 781 (2d Cir. 1992), *cert. denied* 508 U.S. 912 (1993) (plain language of federal law mandates surviving spouse entitled to ERISA plan benefits absent properly executed consent).

Since the proceeds were directly payable to Cathryn on Roger's death, they did not constitute part of Roger's estate. Accordingly, Wolf Creek was a general creditor of the estate because it did not have any interest in any particular assets of the estate. See *Murdock v. First National Bank*, 220 Kan. 459, 470, 553 P.2d 876 (1976).

Under K.S.A. 59-2237, a claimant must file a demand against the estate where the claim exceeds $1,500, and the Kansas Simplified Estates Act does not make any changes to K.S.A. 59-2237. To ensure compliance with K.S.A. 59-2237, Cathryn as administratrix should have required the plan trustee to file its claim against Roger's estate. Once the claim had been filed, Cathryn could have then paid the claim without further court approval. See K.S.A. 59-3204, -3205. Instead, Cathryn paid the loan balance with estate assets before the trustee filed a claim. The question thus narrows to whether Cathryn's act of repaying the loan without a claim being filed voids the transaction.

Several cases have considered similar actions under prior law. For example, in *Young v. Scott*, 59 Kan. 621, 54 Pac. 670 (1898), an administrator *de bonis non* claimed the previous administrator had converted estate funds without the probate court's prior allowance. The probate court found the claims were just demands and ratified their payment. The Supreme Court affirmed, ruling the

administrator did not misadminister the estate, noting the disbursements were ratified by the probate court. The Supreme Court concluded an administrator's improper acts must substantially prejudice the estate and not be a mere technical illegality. 59 Kan. at 624-25. See also *Harvester Co. v. Algie*, 101 Kan. 654, 659, 168 Pac. 876 (1917), where the Supreme Court recognized that where "the assets of the estate are sufficient to pay all claims in full, the fact that just demands were paid irregularly would not prevent the court from subsequently ratifying [the administrator's] action and giving him credit for such payments."

Here, Cathryn acted improperly in paying a claim over $1,500 without a formal demand or court approval; however, the outstanding loan balance did give rise to a valid claim against Roger's estate. And Cathryn, in her official capacity, arranged for a sale at auction of some of Roger's personalty to cover the estate's debts. Auction proceeds were sufficient to cover all claims against the estate. Further, the trial court ratified the payment of the loan balance despite the plan trustee's failure to file a demand. The technically irregular payment of the claim did not substantially harm Scott and Kristi to the extent necessary to require us to disallow credit for the payment.

It is also worth noting that Wolf Creek, as a secured creditor in the savings plan, could have used plan proceeds to pay the loan balance under the terms of the note. But it is undisputed that Roger obtained the loan without Cathryn's consent, which violated federal law. See 29 U.S.C. § 1055. The 401(k) plan also required written spousal consent to the designation of any other beneficiaries. As a result, had Wolf Creek withheld plan proceeds to satisfy the loan balance, Cathryn could have filed a claim against the estate for a like amount.

Similarly, had Cathryn demanded the plan proceeds without satisfying the loan balance, Wolf Creek could have filed a claim against Roger's estate for having failed to disclose he was married and having failed to obtain Cathryn's consent to the loan. It thus appears to us that Cathryn's decision to satisfy the loan with estate funds merely avoided further expenses and claims against Roger's estate.

The trial court did not err in ratifying the payment and in finding that payment to be in the estate's best interest. Our reasoning in the disposition of this issue simplifies the resolution of the remaining issues.

Scott and Kristi argue the trial court erred in ratifying Cathryn's acts as administratrix because the statutory bond under K.S.A. 59-2232 was neither fixed nor filed; therefore, they contend, the trial court lacked subject matter jurisdiction over the estate proceedings.

In general, a defect in the bond of an administratrix does not vitiate the administratrix's appointment, nor does it void the granting of letters of administration. See *Stanley v. Martin*, 137 Kan. 894, 899, 22 P.2d 951 (1933).

In the present case, venue was proper and Cathryn's petition for appointment under the Kansas Simplified Estates Act was sufficient to invoke the general jurisdiction of the court. See K.S.A. 59-2203; K.S.A. 59-2219. The petition alleged Roger died intestate and was a resident of Greenwood County; it set forth the names, ages, and addresses of his heirs; it alleged he owned property and left an estate to be administered in Coffey County; and it pled the name, residence, and address of the person for whom letters of administration were prayed.

The record also shows that Scott and Kristi waived notice of the petition's hearing and consented to an immediate hearing. The magistrate judge's jurisdiction over the subject matter of Roger's estate and the court's power to hear and determine the allegations of Cathryn's petition cannot be denied. See K.S.A. 59-2232; *In re Estate of Johnson*, 180 Kan. 740, 745, 308 P.2d 100 (1957).

Under K.S.A. 59-2401(a)(2), an appeal may be taken within 30 days from the appointment of a fiduciary, which includes an administratrix. See K.S.A. 1997 Supp. 59-102(2) and (3). Scott and Kristi never appealed the court's order appointing Cathryn administratrix. By the time they challenged the appointment in their written defenses to the petition for final settlement, the appointment had become final. Scott and Kristi's failure to directly appeal the order of appointment prevents them from now collaterally questioning its validity. See *In re Estate of Johnson*, 180 Kan. at 746.

Scott and Kristi also contend the order granting Cathryn her statutory allowances under K.S.A. 59-403 is void due to the absence of a filed bond. Appellants acknowledge they did not lodge a timely appeal from the order allowing Cathryn her statutory allowance; they are precluded from raising this issue. See K.S.A. 59-2401(3).

Scott and Kristi also contend the trial court erred in finding there was no justiciable controversy concerning the settlement agreement between Freda, Roger's mother, and Cathryn.

When Cathryn filed Roger's inheritance tax return, she disclosed the settlement agreement and the amount she received under the agreement; the settlement agreement was approved by the trial court, and the Director of Taxation subsequently issued a certificate of nontaxability concerning the settlement property.

The parties acknowledge that the property subject to the settlement agreement was held by Freda and Roger as joint tenants. Property held by a decedent and another in joint tenancy passes to the survivor, and the property is not part of decedent's probate estate. See *In re Estate of Laue*, 225 Kan. 177, 185, 589 P.2d 558 (1979).

It is undisputed that before marrying Cathryn, Roger placed the two 5-acre tracts in joint tenancy with himself and his parents. After the marriage, Roger purchased 80 acres and the sellers conveyed title to Roger and his parents in joint tenancy. Roger never conveyed away his interest in this property during his lifetime. See K.S.A. 59-504, K.S.A. 1997 Supp. 59-505; *Jackson v. Lee*, 193 Kan. 40, 43, 392 P.2d 92 (1964).

Further, Roger's interest in the 90 acres was extinguished on his death and there was nothing to set apart to Cathryn. Simply put, none of Roger's heirs has any interest in the property because Roger's interest in the land was not subject to the laws of intestate succession. *Cf. Osborn v. Osborn*, 102 Kan. 890, 892, 172 Pac. 23 (1918).

Scott and Kristi also seek to invalidate the settlement agreement by claiming it was not properly executed under K.S.A. 1997 Supp. 59-102(8), since they were not involved in the agreement and were not notified of the hearing at which the agreement was approved.

The agreement in the present case is simply not a "valid settlement agreement" under K.S.A. 1997 Supp. 59-102(8). The agreement involved property which Freda held in joint tenancy with Roger. Since the property was not a part of Roger's estate, any arrangement reached between Freda and Cathryn concerning the property could not affect the administration and distribution of the estate. Because Scott and Kristi have no interests affected by the agreement, they lack standing to challenge its validity. See *In re Estate of Wise*, 20 Kan. App. 2d 624, 626, 890 P.2d 744 (1995) (discussing generally the concept of standing).

Next, Scott and Kristi argue Cathryn failed to include in Roger's estate the money she received from the sale of the property subject to the settlement agreement, contending Cathryn converted the sales proceeds in violation of K.S.A. 59-1704 and is liable for double the value of the converted property.

Since the property subject to the settlement agreement was not part of Roger's assets immediately following his death, it must follow that the proceeds from the sale of that property are not a part of Roger's estate. Additionally, no provision of the settlement agreement indicates the sale proceeds would become an asset of Roger's estate. Appellants' argument fails.

Appellants also contend that Cathryn's receipt of the 401(k) proceeds was subject to the outstanding loan balance, arguing Cathryn's repayment of the loan with estate assets increased the amount she would receive as beneficiary of the savings plan and, therefore, amounts to conversion, embezzlement, or fraud. Having already held that Cathryn was entitled to use estate assets to repay the loan, it follows she did not fraudulently embezzle or convert those funds.

Finally, appellants claim Cathryn and her attorney breached their duty of acting in good faith while administering the estate— referring mainly to the failure to file a bond and their use of estate funds to pay off the loan balance owing to the 401(k) plan. Given our prior holdings, the argument is without merit.

Affirmed.