No. 33,579

FRANK BRENDLE, *Appellant,* v. C. A. HUDSON, THE SHELLABARGER MILL & ELEVATOR COMPANY and THE FARM MORTGAGE HOLDING COMPANY, *Appellees.*

(73 P. 2d 1013)

Opinion filed December 11, 1937.

*David Ritchie* and *C. L. Clark,* both of Salina, for the appellant.

*W. B. Crowther, Morris Johnson,* both of Salina, and *John F. Reinhardt,* of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action for the value of wheat alleged to have been wrongfully withheld from plaintiff by defendant. Judgment was for defendant. Plaintiff appeals.

The action arose out of the foreclosure of a mortgage on farm lands. Plaintiff was the mortgagor. Defendant was the mortgagee. It became necessary to foreclose the mortgage. Judgment of foreclosure was entered on September 18, 1933. The property was sold November 13, 1933. This sale was confirmed November 21, 1933. The period of redemption was fixed at eighteen months. The sheriff's deed was issued on May 14, 1935.

On January 30, 1933, the mortgagor had entered into a written lease for the land with one Hudson. Under the terms of the lease the tenant planted the land to wheat. The agreement was that the landlord should receive one third of the crop and the tenant two thirds. The lease expired by its own terms on July 31, 1935. It will be seen that the mortgagor was in possession under the right of

redemption by his tenant in the fall of 1934. That fall the tenant planted the land to wheat. The wheat was still drawing sustenance from the ground on May 14, 1935. After the sheriff's deed was issued to the mortgagee the tenant remained in possession of the land.

When harvest time came the tenant harvested and threshed the wheat, and delivered one third of it to an elevator company. The mortgagor claimed this one third of the wheat, but the tenant and the elevator company refused him possession of it.

This action was instituted by the mortgagor against the elevator company, the tenant, and the mortgagee. After the action was commenced the wheat was sold to the elevator company. The money paid for it was deposited with the clerk of the trial court. It is held by that official, awaiting the disposition of this action.

The trial court found that the wheat belonged to the mortgagee and gave judgment accordingly. As the action was finally passed on by the trial court the dispute was between the mortgagor and the mortgagee as to whose wheat it was. It must be borne in mind in a consideration of the question involved that at the time the wheat was harvested and threshed the mortgagor had no title whatever in the land. He had lost his title when the special master's deed was executed and delivered on May 14, 1935. At that time the wheat was growing.

The first point urged by plaintiff is that this court has held that growing wheat is not saleable on execution. (See *Isely Lumber Co. v. Kitch,* 123 Kan. 441, 256 Pac. 133.) Plaintiff then refers to a line of cases where this court has held that growing crops were personal property. (See *Meyers v. Steele,* 98 Kan. 577, 158 Pac. 1114, and authorities cited.) The argument is that if growing crops are personal property then the wheat in this case was the personal property of the mortgagor, the plaintiff here, and did not pass to the mortgagee with the special master's deed.

The trouble with that argument is that there is an equally imposing line of decisions of this court holding that when growing crops are not reserved in the deed they pass to the grantee in the deed. Not all the authorities which have passed on this question will be referred to here, but see *National Bank v. Beegle,* 52 Kan. 709, 35 Pac. 814. There this court said:

"It has been clearly settled in this state that a conveyance of land, either by voluntary deed or judicial sale, without reservation, carries all growing crops with the title to the land. This rule only applies to crops which are

immature and have not ceased to draw nutriment from the soil at the time of sale, and is not applicable to crops that are ripe and ready for harvest. This distinction has been carefully recognized in all the cases where the subject was considered." (p. 711.)

See, also, 13 A. L. R. 1425.

In the next argument of plaintiff he points out this court has always held that the right of redemption is exempt from sale and cannot be sold upon order of sale or execution and that the owner of the right of redemption is entitled to the rents and profits from the land during the period of redemption. He argues that if the holding of the trial court is correct then in a case like this one, where the land is leased for grain rent, there is certain to be portions of the period of redemption for which the mortgagor owner will not receive any rent. Counsel is frank enough to say that he does not see quite how this court is able to correct this. The only way we see is by legislative action. This court is powerless to exercise such a function.

In his next argument plaintiff claims that under the agreed statement of facts it appears that notwithstanding the sale of the land the tenant remained in possession of the property and harvested the wheat, appropriated two thirds of it for himself, and delivered one third of it to the elevator for plaintiff, and that upon this delivery the wheat became the property of plaintiff.

We cannot agree with plaintiff as to the conclusion to be drawn from the agreed statement of facts on this point. We hold that a fair conclusion to be drawn is that the tenant became the tenant of the mortgagee when the special master's deed was executed and delivered. Under all the circumstances the wheat was delivered to the elevator for the defendant, the mortgagee. A persuasive feature of the case on this point is that plaintiff found it necessary to institute this action against the elevator company, the tenant and the mortgagee. We conclude that under the circumstances the wheat was harvested and threshed for the party to whom it belonged, that is, the owner of the land under the special master's deed. Plaintiffs cite and rely on authorities holding that where a tenant, while in lawful possession of land, sows a crop and before the crop is harvested the landlord seeks to terminate the tenancy and the tenant nevertheless remains on the land and harvests the crop the tenant is the owner of the crop. This court has considered such a situation and refused to follow that rule. (See *Triplett v. Farmers Union Coöp. Co.*, 120 Kan. 725, 244 Pac. 861.) There this court said:

"Defendant cites the case of *Aultman & Taylor Co. v. O'Dowd,* 73 Minn. 58. In that case Nelson produced and harvested crops which did not mature until after the period of redemption from a foreclosure sale expired. The court held Nelson was entitled to the crop, although he was a wrongdoer in holding over until he harvested it. It was conceded that the decision was contrary to the rule of the common law that title to crops goes with the land. In this state the common law prevails with respect to immature crops." (p. 727.)

Furthermore, in this case the tenant did not remain on the land as the tenant of the mortgagor, but rather as the tenant of the mortgagee. It follows that defendant was entitled to judgment.

The judgment of the trial court is affirmed.