(143 P.3d 406)
No. 95,542

In the Matter of the Estate of HENRY M. ROLOFF, Deceased.

Opinion filed September 29, 2006.

*Cheryl L. Trenholm* and *Terence E. Leibold*, of Barber Emerson, L.C., of Lawrence, for appellant Charles A. Schletzbaum.

*Christina A. Newland* and *Robert M. Beachy*, of Van Osdol, Magruder, Erickson & Redmond, P.C., of Kansas City, Missouri, for appellee Commerce Trust Company, Administrator of the Estate of Henry M. Roloff, Deceased.

Before RULON, C.J., GREEN and GREENE, JJ.

GREEN, J.: Charles A. Schletzbaum was a grantee beneficiary of real estate under a transfer-on-death (TOD) deed. Schletzbaum appeals from the trial court's judgment that the growing crops on that real estate were personal property and belonged to the grantor's estate. The TOD deed was devoid of any language reserving the growing crops. The ultimate question is whether the trial court

properly determined that the growing crops on the real estate in question were personal property under K.S.A. 59-1206 and, therefore, belonged to the grantor's estate rather than to Schletzbaum. We determine that because the grantor did not reserve the growing crops in the TOD deed, the growing crops on the real estate passed to Schletzbaum with the title to the land. Accordingly, we reverse.

In the spring of 2004, Henry M. Roloff planted wheat, corn, and soybeans on his farmland in Atchison County, Kansas. On June 26, 2004, Roloff named Schletzbaum, a long-time employee, as a grantee beneficiary under a TOD deed of certain farmland located in Atchison, Kansas. Roloff did not include a reservation of the corn and soybeans growing on the real estate in the TOD deed. Roloff recorded the TOD deed with the Atchison County Register of Deeds on June 28, 2004. Roloff died intestate on July 24, 2004.

Commerce Trust Company (Commerce), a division of Commerce Bank, N.A., was appointed as administrator of Roloff's estate. Commerce told Schletzbaum that the growing crops at the time of Roloff's death did not pass to Schletzbaum with the deeded farmland and demanded an accounting of the proceeds received from the sales of the crops.

Schletzbaum told Commerce that the 14,224.95 bushels of corn had been sold for a total amount of $25,732.19 and that the soybeans yielded a harvest of 11,164.76 bushels, which later sold for $53,720.86. The total sales price received for the crops was $79,453.05. Schletzbaum's expenses for harvesting, transporting, and selling the crops were $12,028.40. After deducting Schletzbaum's expenses, the net proceeds were $67,424.65.

The trial court determined that the growing crops should be considered personal property and that the proceeds should go to Roloff's estate rather than to Schletzbaum. The trial court ordered that the net proceeds from the sales of the crops, $67,424.65, plus interest be paid to Commerce.

As stated earlier, the central issue in this appeal is whether the trial court properly determined that the growing crops on the real estate in question were personal property under K.S.A. 59-1206 and, therefore, belonged to Roloff's estate. This issue presents a question of law and statutory construction. "Interpretation of a

statute is a question of law, and an appellate court's review is unlimited. An appellate court is not bound by the district court's interpretation of a statute. [Citation omitted.]" *Cooper v. Werholtz,* 277 Kan. 250, 252, 83 P.3d 1212 (2004).

*A Conveyance of Land Without Reservation of Growing Crops*

Schletzbaum argues that K.S.A. 59-1206 was inapplicable to the TOD deed, a nonprobate transfer, because the deed conveyed Roloff's entire interest in the farmland, including growing crops, unless there was a reservation of such growing crops. Moreover, he argues that because Roloff had made no reservation of the growing crops in the TOD deed, the growing crops passed with the title to the farmland.

Schletzbaum points out in his brief that an interest of a grantor to be conveyed by a deed is controlled by statute:

"[E]very conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant." (Emphasis added.) K.S.A. 58-2202.

Schletzbaum further notes that our Supreme Court has interpreted the statute to mean that *all* of a grantor's interest in the real estate is conveyed:

"It is established that the word 'estate' used in [K.S.A. 58-2202] means 'interest', so the statute is to be read as though it were phrased: '. . . [E]very conveyance of real estate shall pass all the interest of the grantor therein, unless the intent to pass a lesser interest shall expressly appear or be necessarily implied in the terms of the grant.' " *Gotheridge v. Unified School District,* 212 Kan. 798, 801-02, 512 P.2d 478 (1973) (quoting *Fast v. Fast,* 209 Kan. 24, 27, 496 P.2d 171 [1972]; *Platt v. Woodland,* 121 Kan. 291, 298, 246 Pac. 1017 [1926]).

Furthermore, our Supreme Court has specifically held that growing crops are conveyed with the real estate unless expressly reserved by the grantor. In *Jones v. Anderson,* 171 Kan. 430, 436, 233 P.2d 483 (1951), our Supreme Court stated:

"In this state it has been held *a conveyance of land by voluntary deed or judicial sale, without reservations, carries all growing crops with the title to the land.* . . . . This general rule has been stated in decisions involving varied facts. Some of them are *Garanflo v. Cooley,* 33 Kan. 137, 5 Pac. 766 [1885]; *Goodwin v. Smith,* 49 Kan. 351, 31 Pac. 153 [1892]; *National Bank v. Beegle,* 52 Kan. 709,

35 Pac. 814 [1894]; *Brendle v. Hudson,* 146 Kan. 924, 73 P.2d 1013 [1937]." (Emphasis added.)

As a result, under Kansas statutory law and common law, as between grantor and grantee, a deed conveys the grantor's entire interest, including growing crops, unless the deed contains a reservation of such crops.

## TOD Deed

Under K.S.A. 59-3501 to K.S.A. 59-3507, the Kansas Legislature created a method to allow a nonprobate transfer of an interest in real estate. K.S.A. 59-3501 states:

"(a) An interest in real estate may be titled in transfer-on-death, TOD, form by recording a deed signed by the record owner of such interest, designating a grantee beneficiary or beneficiaries of the interest. *Such deed shall transfer ownership of such interest upon the death of the owner.* A transfer-on-death deed need not be supported by consideration." (Emphasis added.)

The TOD deed need not be supported by consideration.

Further, K.S.A. 59-3504 states:

"(a) Title to the interest in real estate recorded in transfer-on-death form shall vest in the designated grantee beneficiary or beneficiaries on the death of the record owner.

"(b) Grantee beneficiaries of a transfer-on-death deed *take the record owner's interest in the real estate at death,* subject to all conveyances, assignments, contracts, mortgages, liens and security pledges made by the record owner or to which the record owner was subject during the record owner's lifetime including, but not limited to, any executory contract of sale, option to purchase, lease, license, easement, mortgage, deed of trust or lien, claims of the state of Kansas for medical assistance, as defined in K.S.A. 39-702, and amendments thereto, pursuant to subsection (g)(2) of K.S.A. 39-709, and amendments thereto, and to any interest conveyed by the record owner that is less than all of the record owner's interest in the property." (Emphasis added.)

In adopting K.S.A. 59-3504(b), the legislature used the phrase "record owner's interest." As noted by Schletzbaum in his brief, this phrase under Kansas law means all interests of the grantor in the real estate. See *Gotheridge,* 212 Kan. at 801-02.

Schletzbaum further points out that the term "deed," as used and construed in Kansas statutes, "is applied to an instrument conveying lands." K.S.A. 2005 Supp. 77-201, *Twentieth.* The terms

"land," "real estate," and "real property," as used and construed in Kansas statutes, "include lands, tenements and hereditaments, and all rights to them and interest in them, equitable as well as legal." K.S.A. 2005 Supp. 77-201, *Eighth.* Citing Black's Law Dictionary 743 (8th ed. 2004), Schletzbaum states that "hereditament" means "[a]ny property that can be inherited; anything that passes by intestacy."

We could find no Kansas case that has dealt with our specific question in this case. Nevertheless, we believe that when the legislature enacted the transfer-on-death, TOD, real estate ownership provisions, the legislature did not abrogate the well-established law that as between grantor and grantee, a deed conveys the growing crops with the title to the land, unless the deed expressly reserves the growing crops. In holding that the legislature has been specific when it has intended to abrogate the common law in this state, this court stated:

"There is no merit to appellant's contention that the Kansas Probate Code abrogates the common law in this state. We find no indication that the legislature intended such a result. When that body has so intended they have not hesitated to pass specific legislation to such effect. Thus, K.S.A. 58-502 abolished the rule in Shelley's case, K.S.A. 58-504 abolished the rule of indefinite failure of issue, K.S.A. 58-505 abolished the rule in Wild's case, and K.S.A. 58-506 abolished the doctrine of worthier title. Furthermore, K.S.A. 77-109 provides that the common law 'shall remain in force in aid of the General Statutes of this state' unless the common law is statutorily derogated. And as was said in *Gonzales, Administrator v. Atchison, T. & S.F. Rly. Co.,* 189 Kan. 689, 695, 371 P.2d 193 (1962), 'the common law of England has been the basis of the law of this state, and except as modified by constitutional or statutory provisions, by judicial decisions, or by the wants and needs of the people, it has continued to remain the law of this state.' " *In re Estate of Mettee,* 10 Kan. App. 2d 184, 186, 694 P.2d 1325, *aff'd* 237 Kan. 652, 702 P.2d 1381 (1985).

The TOD deed form, K.S.A. 59-3502, created by the legislature is comparable to other deed forms used to convey an interest in real estate. See warranty deeds, K.S.A. 58-2203; quitclaim deeds, K.S.A. 58-2204; sheriff's deeds, K.S.A. 60-2416; and executor's and administrator's deeds, K.S.A. 59-1410 and K.S.A. 59-1413. The essential requirements of the above-mentioned deed forms are very similar to the requirements of the TOD deed form. For example,

the warranty and quitclaim deed forms and requirements under K.S.A. 58-2203 and K.S.A. 58-2204, respectively, are nearly the same as the example and requirements for the TOD deed form under K.S.A. 59-3502.

The major exception, however, is that under a TOD deed, a grantee beneficiary's interest vests only after the grantor's death. Before the legislature enacted K.S.A. 59-3507, this form of conveyance would have been considered a testamentary disposition. See *Lowry v. Lowry,* 160 Kan. 11, Syl. ¶¶ 1, 2, 159 P.2d 411 (1945) (Because the grantor expressly specified that the warranty deeds were to be delivered at death, the instruments were testamentary in character.). Nevertheless, under K.S.A. 59-3507, the legislature has specifically stated that a TOD deed is not testamentary and is not invalid due to nonconformity with the probate code.

Turning our attention to the above-mentioned deeds authorized by the legislature, we note that a warranty deed, quitclaim deed, sheriff's deed, executor's deed, and an administrator's deed all convey an interest in land. See K.S.A. 58-2202. There is little doubt that if a grantor were to fail to reserve growing crops in the above-mentioned deed forms, the growing crops would pass with the title to the land. See *Jones,* 171 Kan. at 436; *Brendle v. Hudson,* 146 Kan. 924, Syl., 73 P.2d 1013 (1937) (ownership of growing crops passed to purchaser at special master's sale where no reservation made in deed).

Similarly, a TOD deed conveys a record owner's interest in land to a grantee beneficiary. Under K.S.A. 59-3504(b), the grantee beneficiary takes all the record owner's interest in the real estate at death, subject to any conveyances, contracts, liens, or pledges made during the record owner's lifetime. Accordingly, if a record owner were to fail to reserve growing crops in a TOD deed, the growing crops would pass with the title to the land, as in the above example. "As between grantor and grantee, there being no reservation, the share of the growing crops which belonged to the grantor passed by the conveyance to the grantee." *Dannefer v. Aurand,* 106 Kan. 605, 607, 189 Pac. 371 (1920) (citing *Chapman v. Veach,* 32 Kan. 167, 4 Pac. 100 [1884]; *Garanflo v. Cooley,* 33 Kan. 137, 5 Pac. 766 [1885]).

*Growing Crops-Personal Property*

Nevertheless, Commerce contended and the trial court agreed that the growing crops were personal property under K.S.A. 59-1206 and, consequently, that the growing crops were not transferred with the title to the land. Commerce maintains that because K.S.A. 59-1206 characterizes growing crops as personal property, the growing crops were included in Roloff's estate under K.S.A. 59-1201. K.S.A. 59-1201 requires the personal representative to inventory and value as of the date of the decedent's death "all real estate and *tangible personal property* owned by the decedent . . . ." (Emphasis added.)

As Schletzbaum points out in his brief, if Commerce's argument were correct, K.S.A. 59-1206 would also apply to growing crops on real estate owned in joint tenancy with right of survivorship, and a deceased joint tenant's interest in the growing crops would be characterized as personal property under K.S.A. 59-1206. As a result, the growing crops would be included in the deceased joint tenant's estate under K.S.A. 59-1201, although the real estate would not be included in the deceased joint tenant's estate.

Kansas courts have never applied K.S.A. 59-1206 to joint tenancy property because no title passes by descent and distribution but rather under the conveyance or contract by which the joint tenancy was created. See *In re Estate of Shields*, 1 Kan. App. 2d 688, 692, 574 P.2d 229 (1977), *aff'd* 224 Kan. 604, 584 P.2d 139 (1978) (quoting *Eastman, Administrator v. Mendrick*, 218 Kan. 78, 83-84, 542 P.2d 347 [1975]). The same principles of law apply to a TOD deed, as no title passes by descent and distribution but rather under the conveyance by the TOD deed, the same as in a joint tenancy deed, which we discuss later in this opinion.

Moreover, Kansas courts have consistently applied K.S.A. 59-1206 and its predecessors, see G.S. 1935, 22-502, as requiring growing crops of a decedent to pass as personalty to the decedent's administrator or executor and not to his or her heirs or devisees. In *Kesler v. Heberling*, 113 Kan. 571, Syl., 213 Pac. 629 (1923), the court held that "[a]s between executor and devisee, on the death of the testator, crops growing on the land devised go to the

executor as assets . . . ." *Kesler* was followed in *Blakely v. Blakely,* 115 Kan. 644, 645-46, 224 Pac. 65 (1924), where the *Blakely* court held that growing crops which were grown by a tenant on testator's land, and harvested and sold after testator's death, belonged to the estate and not to the devisee-life tenant. In *Lindholm v. Nelson,* 125 Kan. 223, 229, 264 Pac. 50 (1928), the court held that the growing crops on the land when the decedent died passed to the administrator as a part of the personal property of the estate and the real property passed to the heirs. Citing *Kesler* and *Blakely,* our Supreme Court in *Pederson v. Russell State Bank,* 206 Kan. 718, 720-24, 481 P.2d 986 (1971), held that K.S.A. 59-1206 applied to proceeds received from a sale of a rent wheat crop. The wheat was growing on devised land when testator died.

On the other hand, Schletzbaum did not receive title to the farmland as an heir under intestate succession or a devisee under a will. Based on how K.S.A. 59-1206 has been applied to decedent's heirs or devisees, K.S.A. 59-1206 was inapplicable to Schletzbaum because he did not receive title to the farmland as an heir or devisee. As a result, the growing crops of Roloff did not pass as personalty to Commerce under K.S.A. 59-1206.

Commerce also argues that K.S.A. 59-3501 provides that only "[a]n interest in real estate" may be transferred by a TOD deed. Moreover, Commerce contends that because growing crops are personal property under other Kansas statutes and not real estate, the legislature did not intend to include growing crops in what can be transferred as part of a TOD deed. As Schletzbaum notes, Commerce's argument is contradicted by the language of the TOD deed statutes. K.S.A. 59-3504(b) states that on the death of the record owner, the interest in the real estate vests in the beneficiary "subject to all conveyances, assignments, contracts, mortgages, liens and *security pledges* made by the record owner . . . ." (Emphasis added.)

Citing language from *Hutchinson Nat'l. Bank & Tr. Co. v. Brown,* 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988), Schletzbaum states that a pledge is a bailment of personal property as security for a debt. Schletzbaum points out that if a TOD deed applies only to the real estate and not to grow-

ing crops, as argued by Commerce, there would have been no need for the legislature to make the conveyance subject to a pledge and that language would not have been necessary. Hence, if a TOD deed does not transfer growing crops, then making the transfer subject to a security pledge *is* meaningless. In interpreting a statute, a presumption exists that the legislature "does not intend to enact useless or meaningless legislation." *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643, 941 P.2d 1321 (1997) (citing *In re Adoption of Baby Boy L.*, 231 Kan. 199, Syl. ¶ 7, 643 P.2d 168 [1982]).

Yet, in drafting the TOD deed statutes, the legislature understood the well-established law in Kansas that as between grantor and grantee, a deed transfers growing crops, unless there is a reservation of such crops. Moreover, the legislature understood the law under the Uniform Commercial Code (UCC) that growing crops are personal property for purposes of filing security interests. See K.S.A. 84-2-107(2) (application of UCC to sales of growing crops apart from the land); see also K.S.A. 2005 Supp. 84-9-334(i) (Growing crops are goods in which a security interest may be created and perfected.). As a result, the legislature determined that a TOD deed must be made subject to a security interest or pledge in the event the record owner pledges or grants a security interest in growing crops on the real estate before the record owner's death. The legislature made it abundantly clear that the record owner, while living, is to be treated as the absolute owner of the real estate when it comes to conveying or granting any interests or liens in such property. See K.S.A. 59-3504(b).

The cases cited by Commerce about the UCC have absolutely no relevance because the growing crops in this case were not subject to a security interest. Moreover, the UCC does not change the principles of law relating to conveyances of land by deed. In fact, this is exactly the result anticipated by the legislature as it made a conveyance of land by a TOD deed subject to any security interests or pledges. See K.S.A. 59-3504(b).

Kansas common law and statutory law state that a deed conveys all of the grantor's interest in real estate, including growing crops, if not reserved by the grantor. Consequently, a TOD deed is sub-

ject to that established law. Therefore, we determine that because Roloff did not reserve the growing crops in the TOD deed, the growing crops passed with the title to the land.

*TOD Interest Similar to Joint Tenancy with Right of Survivorship*

Moreover, as pointed out by Schletzbaum, a TOD deed creates basically the same interest that is created by the survivorship attribute of a joint tenancy deed—an interest with the right of survivorship:

" 'Survivorship is the distinctive characteristic and the grand incidence of an estate in joint tenancy. On the death of a joint tenant the property descends to the survivor or survivors and the right of survivorship terminates only when the entire estate, without the tenants having disposed of their title or otherwise terminating the tenancy, comes into the hands of the last survivor.' " *Eastman, Administrator v. Mendrick,* 218 Kan. 78, 82, 542 P.2d 347 (1975) (quoting *Johnson v. Capitol Federal Savings & Loan Assoc.,* 215 Kan. 286, Syl. ¶ 3, 524 P.2d 1127 [1974]).

" ' . . . [U]nder a joint tenancy agreement . . . a surviving joint tenant . . . does not take as a new acquisition from the deceased joint tenant under the laws of descent and distribution, but under the conveyance or contracts by which the joint tenancy was created, his estate merely being freed from the participation of the other.' [Citations omitted.]" *In re Estate of Shields,* 1 Kan. App. 2d at 692.

"Property held by a decedent and another in joint tenancy passes to the survivor, and the property is not part of decedent's probate estate. [Citation omitted.]" *In re Estate of Harrison,* 25 Kan. App. 2d 661, 669, 967 P.2d 1091 (1998), *rev. denied* 267 Kan. 885 (1999).

A TOD deed has many of the same survivorship characteristics as a joint tenancy deed. These characteristics are as follows: (a) that the record owner's interest automatically transfers to the grantee beneficiary upon the death of the record owner, K.S.A. 59-3501(a) and K.S.A. 59-3504(a); (b) that no other action or procedure is required to transfer full title to the grantee beneficiary, K.S.A. 59-3501(a) and K.S.A. 59-3504; (c) that any attempt by the record owner to revoke or convey the record owner's interest in real estate subject to a TOD deed by the record owner's will is invalid, K.S.A. 59-3503(c); (d) that because title in the real estate vests immediately in the grantee beneficiary upon the death of the record owner under K.S.A. 59-3501(a) and K.S.A. 59-3504(a), the real estate is

not included in the record owner's probate estate; and (e) that the transfer of the real estate by a TOD deed is not testamentary in nature under K.S.A. 59-3507, and is not subject to the provisions of the probate code.

When a joint tenant dies, title to the property under the joint tenancy deed immediately vests in fee simple to the surviving joint tenants. *In re Estate of Mater,* 27 Kan. App. 2d 700, 704-07, 8 P.3d 1274, *rev. denied* 270 Kan. 898 (2000). The deceased joint owner does not die seized of any heritable interest in the property under the joint tenancy deed that could be distributed under the terms of the deceased joint tenant's will. Upon the death of a joint tenant, no title passes to such joint tenant's heirs. Instead, fee simple title vests in the surviving joint tenants under the deed. As a result, a court does not have authority to distribute the joint tenancy property. 27 Kan. App. 2d at 706-07. The same result occurs with a TOD deed. A grantor of a TOD deed does not die seized of any heritable interest in the real estate that could be distributed under the terms of the grantor's will. See K.S.A. 59-3503(c); K.S.A. 59-3504. Moreover, no title to the real estate passes to the grantor's heirs; fee simple title vests in the grantee beneficiary upon the record owner's death, and a court has no authority to distribute the real estate. See K.S.A. 59-3501; K.S.A. 59-3504; K.S.A. 59-3507.

Thus, the treatment of growing crops compared between a joint tenancy deed and a TOD deed should be the same, and the established law regarding growing crops should be applied to both. In fact, the Nebraska Supreme Court has held that "[c]rops standing on the land, whether matured or not, pass with the land to the surviving joint tenant and are not an asset of the estate of the deceased tenant subject to administration." *In re Estate of Kennedy,* 220 Neb. 212, 215-16, 369 N.W.2d 63 (1985).

As a result, the growing crops on the real estate transferred by the TOD deed passed to Schletzbaum, as the grantee beneficiary, because the TOD deed did not contain a reservation of the growing crops, the same as if Roloff and Schletzbaum had owned the property in joint tenancy with right of survivorship. The survivorship attribute for both forms of deeds is a contractual relationship which causes title in such property to vest immediately upon either the

record owner's or the joint tenant's death. See K.S.A. 59-3504; *In re Estate of Shields*, 1 Kan. App. 2d at 692.

Reversed.