NOT DESIGNATED FOR PUBLICATION

No. 115,175

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TAMMIE S. WILLIAMS,
*Appellee*,

v.

PAULA M. WILLIAMS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed September 16, 2016.
Affirmed.

*Rodney H. Symmonds*, of Symmonds & Symmonds, LLC, of Emporia, for appellant.

*Monte L. Miller,* of Miller & Miller, Chtd., of Emporia, for appellee.

Before SCHROEDER, P.J., GREEN, J., and STUTZMAN, S.J.

*Per Curiam*:  Robert Williams and Scott Williams owned real estate as joint tenants
with rights of survivorship. Robert died and was survived by his wife, Paula M. Williams.
Then, Scott died and was survived by his wife and sole heir, Tammie S. Williams.
Tammie filed an action to quiet title to the real estate in question. Paula protested,
resulting in Tammie moving for summary judgment on her quiet title action. The trial
court granted Tammie's summary judgment motion. Paula appeals this ruling, arguing
that she is entitled to one-half of Robert's interest in the real estate under K.S.A. 59-505.
Finding merit in Tammie's action, we affirm the judgment of the trial court.

1

On May 22, 1964, O. L. Williams conveyed over 100 acres of land to his son, Robert, and Robert's son, Scott. According to the warranty deed conveying the real estate, Robert and Scott owned the land "as joint tenants with the right of survivorship and not as tenants in common." Robert and Scott recorded this deed on October 18, 1966.

On September 13, 2000, Robert died. Paula, Robert's wife, survived him. There was no probate of Robert's estate.

On April 1, 2014, Scott died. Tammie, Scott's wife, survived him. During Scott's probate proceedings, Paula asserted that she had an interest in the real estate that Robert and Scott had formerly owned together as joint tenants. The trial court's decree of descent ruled that Tammie owned 100 percent of the real estate.

On April 30, 2015, Tammie petitioned for quiet title to the disputed real estate. Paula responded that Tammie was not entitled to quiet title, counterclaiming: (1) that she was entitled to one-half of Robert's interest in the real estate as his surviving spouse under K.S.A. 59-505; and (2) that she was entitled to several items of personal property located on the real estate. In response to Paula's counterclaims, Tammie argued: (1) that the laws of joint tenancy, not probate, were applicable in this case; (2) that Paula's argument should be barred "under the theories of laches, estoppel, statute of frauds and statute of limitations" given that Paula had not taken any action since Robert's death in 2000; and (3) that Paula was entitled to some, but not all, items of personal property located on the real estate.

Tammie then moved for partial summary judgment, asserting that she was entitled to quiet title to the real estate. Citing *Eastman v. Mendrick*, 218 Kan. 78, 542 P.2d 347 (1975), Tammie argued that upon a joint tenant's death, that joint tenant's share in property descends in its entirety to the surviving joint tenants; thus, Paula had no interest

in the disputed real estate because the entirety of Robert's interest had descended to Scott upon Robert's death.

Paula responded by also moving for partial summary judgment. Again, Paula argued that K.S.A. 59-505 required that she receive one-half of Robert's interest in the property, that is, 25 percent of the total interest in the real estate.

The trial court held a hearing on Tammie's and Paula's respective motions for summary judgment. Tammie reargued that Paula had no rights because Scott had a fee simple interest in the property following Robert's death. Paula reargued that she was entitled to one-half of Robert's interest in the real estate under K.S.A. 59-505.

The trial court ultimately granted Tammie's motion for partial summary judgment. First, the trial court found that the following facts were uncontroverted: (1) that Paula is the surviving spouse of Robert and that Tammie is the surviving spouse and sole heir of Scott; (2) that Paula has been a resident of Kansas since before the real estate was conveyed to Robert and Scott; (3) that O. L. conveyed the real estate to Robert and Scott as joint tenants with rights of survivorship; (4) that Paula was aware of this conveyance; (5) that upon Robert's death, Scott was the sole surviving tenant; (6) that Paula never consented in writing, by will, by election, or by law, "to take under a will to the disposition of the real estate"; and (7) that the real estate has never been sold on execution, judicial sale, or by any other legal proceeding. Based on those uncontroverted facts, the trial court ruled that the title of the real estate should be vested solely in Tammie. The trial court cited *Eastman* and *Osborn v. Osborn*, 102 Kan. 890, 172 P. 23 (1918), for the proposition that when land is held by tenants with rights of survivorship, a deceased joint tenant's interest in real estate extinguishes upon that tenant's death with the entirety of the deceased joint tenant's interest passing to the surviving joint tenants in fee simple.

3

Paula timely appealed. This court issued a show cause order for lack of jurisdiction since the trial court's order did not involve the personal property in dispute. Paula responded that although the trial court's summary judgment ruling was not a final order regarding the personal property, this court had jurisdiction over the trial court's ruling regarding the real estate under K.S.A. 2015 Supp. 60-2102(a)(3). K.S.A. 2015 Supp. 60-2102(a)(3) states that "the appellate jurisdiction of the court of appeals may be invoked by appeal as a matter of right from: . . . an order involving . . . the title to real estate." This court then retained jurisdiction under this provision.

*Did the Trial Court Err by Granting Tammie's Summary Judgment Motion?*

As she did before the trial court, Paula argues that she is entitled to one-half of Robert's interest in the real estate under K.S.A. 59-505. Paula argues that the trial court erred by relying on our Supreme Court's decisions in *Eastman* and *Osborn* because those cases are distinguishable from this case. Moreover, Paula argues that this court should rely on our Supreme Court's holdings in *Ackers v. First Nat. Bank of Topeka,* 192 Kan. 319, 387 P.2d 840 (1963), *decision clarified on denial of reh.*, 192 Kan. 471, 389 P.2d 1 (1964), and *In re William's Estate*, 158 Kan. 734, 150 P.2d 336, *adhered to on reh'g* 159 Kan. 232, 153 P.2d 906 (1944), because these cases discussed the rule that a surviving spouse is entitled to one-half of the deceased spouse's interest in real estate.

Tammie responds that since Robert and Scott owned the real estate as joint tenants with rights of survivorship, the probate laws are irrelevant. Thus, according to Tammie, Paula's arguments that she is entitled to one-half of Robert's interest in the real estate in question under K.S.A. 59-505 fail.

4

*Standard of Review*

An appellate court uses the following standard when reviewing summary judgment motions:

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'" *Bank v. Par.*, 298 Kan. 755, 759, 317 P.3d 750 (2014) (quoting *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 330, 277 P.3d 1062 [2012]).

*Applicable Law*

K.S.A. 59-505 states:

> "Except as provided further, the surviving spouse shall be entitled to receive one-half of all real estate of which the decedent at any time during the marriage was seized or possessed and to the disposition whereof the survivor shall not have consented in writing, or by a will, or by an election as provided by law to take under a will, except such real estate as has been sold on execution or judicial sale, or taken by other legal proceeding. The surviving spouse shall not be entitled to any interest under the provisions of this section in any real estate of which such decedent in such decedent's lifetime made a conveyance, when such spouse at the time of the conveyance was not a resident of this state and never had been during the existence of the marriage relation. The spouse's

5

entitlement under this section shall be included as part of the surviving spouse's property under K.S.A. 59-6a207, and amendments thereto."

"The doctrine of joint tenancy and its application to personal as well as to real property has been recognized in this state for many years." *Eastman*, 218 Kan. at 81. Our Supreme Court has explained the importance of the right of survivorship as follows:

> "'Survivorship is the distinctive characteristic and the grand incidence of an estate in joint tenancy. On the death of a joint tenant the property descends to the survivor or survivors and the right of survivorship terminates only when the entire estate, without the tenants having disposed of their title or otherwise terminating the tenancy, comes into the hands of the last survivor.'" *Eastman*, 218 Kan. at 82 (quoting *Johnson v. Capitol Federal Savings & Loan Assoc.*, 215 Kan. 286, Syl. ¶ 3, 524 P.2d 1127 [1974]).

Moreover, "'[p]roperty held by a decedent and another in joint tenancy passes to the survivor, and the property is not part of decedent's probate estate. [Citation omitted.]'" *In re Estate of Roloff*, 36 Kan. App. 2d 684, 694, 143 P.3d 406 (2006) (quoting *In re Estate of Harrison*, 25 Kan. App. 2d 661, 669, 967 P.2d 1091 [1998], *rev. denied* 267 Kan. 885 [1999]).

In *Eastman*, the administrator of Margaret Eastman's estate sued to recover one-half of Margaret's interest in savings accounts that Margaret and her siblings, the defendants, had held together as joint tenants with rights of survivorship. The administrator argued that the defendants conspired to get Margaret to change the names on her savings accounts to include them as joint tenants with rights of survivorship instead of Margaret's husband. Our Supreme Court disagreed, holding that there was no evidence of conspiracy. *Eastman*, 218 Kan. at 83. Our Supreme Court further held that because

> "under a joint tenancy agreement, . . . a surviving joint tenant of personal property does not take as a new acquisition from the deceased joint tenant under the laws of descent and

distribution, but under the conveyance or contracts by which the joint tenancy was created, his estate merely being freed from the participation of the other." *Eastman*, 218 Kan. at 83-84.

In route to this holding, our Supreme Court explicitly rejected the administrator's argument that K.S.A. 59-602 of the probate code defeated a contract for joint tenancy with rights of survivorship. *Eastman*, 218 Kan. at 83-84.

In *Osborn*, a widow sued to recover real estate passed to her stepsons upon the death of her husband, William. William had recorded the deed to the disputed real estate with language: "William F. Osborn, and at his death to his sons." The widow argued that her stepsons could not claim title to the real estate because G.S. 1915, 3831, the predecessor statute to K.S.A. 59-505, required that she receive one-half of William's interest in the real estate. *Osborn*, 102 Kan. at 891-92. Our Supreme Court rejected this argument, explaining:

"The transactions disclosed by the deeds were between grantors and grantees. The whole estate passed from the grantors. Instead of taking an equitable estate, William F. Osborn took a legal estate, and instead of taking the whole estate, he took a life estate. The remainders in fee vested in his sons. The character and extent of the estate which he took was not affected in the slightest degree by the fact that he had a wife who might outlive him. No equities remained to him, because the transactions were fully executed and he received what he desired. The estate which he took did not survive him. He had no interest, legal or equitable, in the remainders. After his death the whole estate in fee simple vested in his sons, and there was nothing to set apart to his widow. [G.S. 1915, 3831] refers to legal or equitable estates of the husband which are capable of inheritance, and does not apply to interests in land which are extinguished by his death." *Osborn*, 102 Kan. at 892.

7

*Analysis*

Neither party disputes the factual findings made by the trial court. Thus, this court's review is limited to the question of whether Tammie was entitled to judgment as a matter of law. Paula's arguments regarding why Tammie is not entitled to judgment as a matter of law can be divided into two categories: (1) that the trial court's reliance on *Eastman* and *Osborn* was misplaced; and (2) that our Supreme Court has emphasized the importance of a surviving spouse's one-half interest of the deceased spouse's real estate. Nevertheless, both of these arguments fail.

First, Paula's arguments regarding how *Eastman* and *Osborn* are distinguishable are unpersuasive. While the underlying facts of *Eastman* and *Osborn* differ from this case, the rules in *Eastman* and *Osborn* are still applicable. Paula implies that the *Eastman* court merely found that married people can dispose of personal property without reference to their spouse. She also implies that the *Eastman* court referenced that a surviving joint tenant does not take through a new acquisition under intestate succession laws but through the original contract in passing. Yet, as already discussed, the *Eastman* court very clearly held that the surviving joint tenant, of either personal or *real property*, takes the entirety of the interest in fee simple automatically upon the deceased joint tenant's death. *Eastman*, 218 Kan. at 83-84. As a result, in this case as in *Eastman*, the disputed property never entered into the deceased joint tenant's probate estate.

Moreover, the *Eastman* court also held that K.S.A. 59-602, the probate provision that limits a deceased spouse's ability to deprive the surviving spouse of real estate through a will, did not trump contractual provisions establishing joint tenancy with rights of survivorship. *Eastman*, 218 Kan. at 83-84. Accordingly, the *Eastman* holding applies to this case, meaning that K.S.A. 59-505, the provision regarding a surviving spouse's rights to real estate when the deceased spouse dies intestate, does not trump contractual provisions establishing joint tenancy with rights of survivorship.

8

Although *Osborn* did not involve joint tenancy, it did involve whether the deceased spouse could contract to give real estate to his son through a deed, depriving his surviving spouse from taking one-half of the interest in the real estate under a provision substantively identical to K.S.A. 59-505. *Osborn*, 102 Kan. at 891-92. As a result, *Osborn* establishes that a surviving spouse cannot claim one-half interest in the deceased spouse's real estate under K.S.A. 59-505 when a separate contract states that the real estate will transfer automatically upon death. Here, a separate contract stated that Robert and Scott held the real estate as joint tenants with rights of survivorship. The *Osborn* holding, then, can be applied to this case. As a result, Paula was not entitled to one-half interest in the real estate under K.S.A. 59-505 because Robert's interest passed automatically under the real estate deed to Scott upon his death.

Furthermore, given that both *Eastman* and *Osborn* are older cases, we point out that in the 2006 case of *In re Estate of Roloff*, this court explained the transfer of property interests held under a joint tenancy with rights of survivorship as follows:

> "When a joint tenant dies, title to the property under the joint tenancy deed immediately vests in fee simple to the surviving joint tenants. [Citation omitted.] The deceased joint owner does not die seized of any heritable interest in the property under the joint tenancy deed that could be distributed under the terms of the deceased joint tenant's will. Upon the death of a joint tenant, no title passes to such joint tenant's heirs. Instead, fee simple title vests in the surviving joint tenants under the deed. As a result, a court does not have authority to distribute the joint tenancy property. [Citation omitted.]" 36 Kan. App. 2d at 695.

Consequently, *In re Estate of Roloff* underscores the point that Robert's interest never became part of his probate estate, meaning Paula cannot claim one-half of Robert's former interest in the real estate under K.S.A. 59-505.

9

Second, Paula's reliance on *Ackers* and *In re William's Estate* is misplaced. Neither of those cases involved joint tenancies. *Ackers* involved a surviving spouse's right to real estate, where the surviving spouse would have had an interest in the property at issue but for the fact the deceased spouse had conveyed the property to another person. See 192 Kan. at 322-23. *In re William's Estate* involved the validity of the deceased's will. 158 Kan. at 737-38. In her brief, Paula cites the following language from *In re William's Estate* as evidence that she was entitled to one-half of Robert's interest in the land:

> "A wife residing in this state is entitled, upon the death of her husband, to the half of all the real estate owned by him during the marriage, which has not been sold on judicial sale, and is not necessary for the payment of debts, and of which the wife has made no conveyance, so that there is an inchoate interest to the extent of one-half given to the wife in the real estate of the husband." 158 Kan. at 738.

Yet, this language was included in *In re William's Estate* because plaintiffs argued that one of the witnesses to the deceased's will was actually a quasi-beneficiary of the will since the witness' wife was a named beneficiary in the will. 158 Kan. at 737-38. Thus, neither *Ackers* nor *In re William's Estate* diminishes the rules adopted and followed in *Osborn*, *Eastman*, and *In re Estate of Roloff*. Additionally, the sections Paula quotes in *Ackers* and *In re William's Estate* merely contain language quoting and paraphrasing older versions of K.S.A. 59-505. See *Ackers*, 192 Kan. at 326-27; and *In re William's Estate*, 158 Kan. at 738.

Paula introduces a red herring with the older quoted versions of K.S.A. 59-505 from *Ackers* and *In re William's Estate*. The older version of K.S.A. 59-505 is irrelevant to the question before us. The question at issue is: What effect does real property held in joint tenancy with the rights of survivorship have on the disposition of this property? To quote the older versions of K.S.A. 59-505 is to introduce an extraneous matter that ignores the question at hand.

10

In summary, Robert, as the deceased joint tenant, did not die with any heritable interest under the joint tenancy that could be distributed through his probate estate. Instead, upon Robert's death, his interest passed to Scott in fee simple. Then, upon Scott's death, his interest passed to Tammie as his sole heir. Accordingly, Paula does not have any rights to the real estate in question. As a result, we affirm the trial court order granting partial summary judgment.

Affirmed.